IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES, | Case No. 3:23-cr-00049-IM |
| v. | **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL** |
| **KENNETH GEORGE HAROLD**, | |
| Defendant. | |

Andrew T. Ho, Hannah Horsley, Nicholas D. Meyers, and Paul T. Maloney, U.S. Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for the United States.

C. Renee Manes and Anna Maria Belesiotis, Federal Public Defender, 101 SW Main Street, Suite 1700, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Before this Court is Defendant Kenneth George Harold's Motion to Compel ("Mot."), ECF 39. Defendant stands charged with a single count of Interstate Riot under 18 U.S.C. § 2101. He seeks five sets of documents and records that he contends are relevant to his claims of selective prosecution and outrageous government conduct, as well as to the potential impeachment of the Government's witnesses and a motion to suppress the Government's use of

PAGE 1 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

certain evidence. The Government opposes the Motion. *See* Government's Opposition to Defendant's Motion to Compel Discovery ("Opp."), ECF 40. This Court held oral argument on the Motion. *See* Minutes of Proceedings, ECF 43.

For the reasons below, this Court DENIES Defendant's Motion. Most of Defendant's requests lack a valid basis under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). And many of the requests are moot.

## BACKGROUND

### A. Procedural Background

On February 8, 2023, a federal Grand Jury indicted Defendant on one charge of Interstate Riot, 18 U.S.C. § 2101. *See* Indictment (Redacted), ECF 1. According to the Indictment, Defendant traveled and communicated by text across Washington to Oregon to break large glass windows in downtown Portland, Oregon, causing $11,188.43 in damage. *Id.* ¶ 17. At the time of these events, Defendant was an active member of the U.S. Army, stationed at Joint Base Lewis-McChord in Washington. *Id.* ¶ 1. As construed by the Ninth Circuit, the Interstate Riot Act "prohibits unprotected speech that instigates (incites, participates in, or carries on) an imminent riot, unprotected conduct such as committing acts of violence in furtherance of a riot, and aiding and abetting of that speech or conduct." *United States v. Rundo*, 990 F.3d 709, 720–21 (9th Cir. 2021) (severing portions of the Interstate Riot Act pursuant to the First Amendment).

Defendant had his first appearance before Federal Magistrate Judge Russo on February 21, 2023. Minutes of Proceedings, ECF 7. Defendant entered a plea of not guilty and was released from custody with conditions. *Id.* The Government was reminded of its discovery obligations under *Brady* and its progeny. *Id.*

On March 27, 2024, Defendant and the Government requested, via email, a status hearing to discuss having Defendant waive his speedy trial rights and to set a later trial date. In advance

of the hearing and at this Court's request, Defendant filed a status report informing this Court

that he intended to file motions to compel discovery, to suppress certain evidence, and to dismiss

the Indictment for selective prosecution. Defendant's Status Report, ECF 36 at 11–13. This

Court held the status hearing on April 3, 2024. *See* Minutes of Proceedings, ECF 37. This Court

set briefing deadlines for the anticipated motions and set trial for December 3, 2024. *Id.*

On March 12, 2024, Defendant filed the instant Motion to Compel. The Government

timely responded on April 19, 2024. On May 7, 2024, this Court held oral argument on the

Motion. *See* Minutes of Proceedings, ECF 43. During oral argument, the Government provided

to this Court, for in camera review, a form that the Federal Bureau of Investigation ("FBI")

submitted to the Department of Defense requesting access to Defendant's military files. This

Court has reviewed the document in camera.

**B. Defendant's Discovery Requests**

(1) Any and all video and audio recordings of the protest on April 20, 2021, in the control of
the government.

(2) Records and documents regarding the search and seizure of Mr. Harold's phone.

> a. Any and all records and documents of communications between
> any federal law enforcement agent or officer and any members,
> staff, employees or contractors with the Portland Police Bureau or
> the Multnomah County District Attorney's Office which relate, in
> any way, to Mr. Harold's cell phone. As used herein federal law
> enforcement agent or officers includes Assistant United States
> Attorneys.

> b. Records and documents confirming the identity of the individual
> who provided the government with the property receipt produced
> on February 23, 2023, designated as HAROLD_000015.

> c. Records and documents confirming the identity of the individual
> who provided the government with the property receipt produced
> on April 9, 2024, designated as HAROLD_0005895.

d. Records and documents explaining the alteration of the property receipt from that documented in HAROLD_000015 to that shown in HAROLD_0005895.

e. Records and documents establishing what federal agent sought permission to obtain Mr. Harold's phone from the Portland Police Bureau, and the basis therefore.

f. Records and documents establishing who authorized the request to obtain Mr. Harold's phone from the Portland Police Bureau, and the basis therefore.

g. Any records or documents regarding any cloning or tap on Mr. Harold's phone that existed prior to his arrest on April 20, 2021.

h. Any records or documents regarding the cloning of any phones of any individuals involved in the protests in Portland on April 19 and 20, 2021, regardless of whether those individuals were arrested.

(3) Records and documents regarding the deployment of federal agents as undercover operatives at the protests in Portland on the nights of April 19 and 20, 2021.

a. Records and documents authorizing deployment of any federal law enforcement agents to operate undercover at the protests in Portland that occurred on April 19 and 20, 2021.

b. Records and documents of any temporary duty assignment for any federal law enforcement agent to operate undercover at the protests in Portland that occurred on April 19 and 20, 2021.

c. Records and documents confirming the scope, authority, instructions and/or guidance for any federal agents acting undercover in the protests in Portland that occurred on April 19 and 20, 2021.

d. And any all reports written by any federal agent or agents who were undercover in the protests in Portland on the nights of April 19 and 20, 2021.

(4) Records and documents establishing how the FBI obtained Mr. Harold's entire military file.

(5) Copies of all communications between state, local, and federal law enforcement about Mr. Harold memorialized in emails, memoranda, text messages or notes, including, without limitation: reports about investigative activity, discussions of the witnesses and evidence, information being obtained during interviews or interactions with witnesses/victims or other sources of information; and, issues relating to credibility.

PAGE 4 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

Mot., ECF 39 at 6–15.

**LEGAL STANDARDS**

**A.  *Brady***

Under *Brady* and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), the

prosecution must disclose evidence favorable to the accused, "where the evidence is material

either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*,

373 U.S. at 87). When the prosecution fails to do so, it is in violation of the Fifth Amendment's

due process clause. *Id.* "Evidence is material if there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different."

*Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008) (citation and internal quotation marks

omitted).

To comply with *Brady*, the Government must provide information "if it is held by

members of the prosecution team, such as investigating agents, or if it is held by other executive

branch agencies and the prosecutor has knowledge of and access to the evidence." *United States*

*v. Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir. 2024) (citations and internal quotation

marks omitted). This obligation extends to information the prosecutor "could have learned." *Id.*

(citation omitted). Although the prosecution team is generally "deemed to have knowledge of

and access to anything in the possession, custody or control of any federal agency participating

in the same investigation of the defendant," *id.* (citation omitted), that presumption extends only

to the components of the particular agency that participated in the investigation, not the entire

agency, *see id.* at 844–45. The Government's *Brady* obligation also extends to information held

by state agencies and officers who participated in the investigation of the defendant. *See United*

*States v. Price*, 566 F.3d 900, 903, 908–09 (9th Cir. 2009).

**B. Rule 16**

Federal Rule of Criminal Procedure 16 states that the prosecution must permit the defendant to inspect and copy documents if the documents are "within the government's possession, custody, or control" and are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Rule 16 is "broader than *Brady*" in the sense that "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). "The 'possession' element of *Brady* is treated as coextensive with that of Rule 16." *United States v. Cano*, 934 F.3d 1002, 1023 n.16 (9th Cir. 2019) (citations omitted).

Establishing materiality requires a defendant to provide "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (citation omitted). However, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice." *Id.* (citation omitted). Further, Rule 16 does not permit "far reaching fishing expedition[s]" whereby defendants can seek a range of materials "'considerably broader' than any materials relevant to the charges against the defendants." *United States v. Wolfenbarger*, Case No. 16-CR-00519-LHK-1, 2019 WL 3037590, at *9 (N.D. Cal. July 11, 2019) (quoting *United States v. Chon*, 210 F.3d 990, 994–95 (9th Cir. 2000)).

Rule 16(a)(2) bars "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." This government work product privilege extends to "the internal product of local police work later provided to the federal government." *United States v. Martinez*, 657 F.3d 811, 819 (9th Cir. 2011) (citing *United States v. Fort*, 472 F.3d 1106, 1119 (9th Cir. 2007)). Rule 16(a)(2) does not apply to disclosures required under

*Brady. See* 2 Charles A. Wright et al., Federal Practice & Procedure § 256 (4th ed. Apr. 2023

update); Wayne LaFave et al., 6 Criminal Procedure § 24.3(b) (4th ed. Dec. 2023 update); *cf.*

*Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006).

## DISCUSSION

Defendant's Motion is denied because he is not entitled to any of his requested materials

under Rule 16 or *Brady*, or the requests are moot. Part A addresses each of Defendant's proffered

bases for materiality. Part B then addresses each of Defendant's discovery requests.

## A. Defendant's Alleged Bases for Materiality

Defendant presents four bases in support of his Motion to Compel. According to

Defendant, he needs information from the Government that is relevant to his claims of

(1) selective prosecution and (2) outrageous government conduct, as well as (3) the impeachment

of the Government's witnesses and (4) the suppression of the Government's evidence for its

case-in-chief. This Court addresses each ground for materiality in turn.

### 1. Selective Prosecution

In his Motion, Defendant contends that the information he is seeking is relevant to his

claim of selective prosecution. Mot., ECF 39 at 9; *see also* Defendant's Status Report, ECF 36 at

13. Defendant argues that he is being selectively prosecuted "based on [his] political beliefs" as a

"left-wing protestor." Defendant's Status Report, ECF 36 at 13. In support of this contention,

Defendant cites a September 2020 article from The Nation reporting that "federal agents were

tapping and cloning the phones of protestors in Portland" and a December 2022 article from The

New York Times reporting that federal agents were deployed to "surveil left-wing protestors."

Mot., ECF 39 at 9–10.

This argument is unavailing in light of the Supreme Court's decision in *United States v.*

*Armstrong*, 517 U.S. 456 (1996). There, several criminal defendants moved for discovery or

PAGE 7 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

dismissal of the indictment, arguing that "they were selected for federal prosecution because they [were] black." *Id.* at 459. In support of that claim, the defendants provided a study from the Office of the Federal Public Defender stating that in all twenty-four crack or cocaine cases closed by the Office in 1991, every defendant was black. *Id.*

     *Armstrong* held that this showing did not entitle the defendants to discovery for their selective prosecution claim. *Armstrong* began by explaining that Rule 16(a)(1)(E) "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id.* at 463. To be entitled to discovery on the latter, *Armstrong* held, "a defendant must show that 'the Government has failed to prosecute others who are similarly situated to the defendant' as evidence of discriminatory effect." *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018) (quoting *Armstrong*, 517 U.S. at 469). Because the public defenders in *Armstrong* "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted," 517 U.S. at 470, the defendants were not entitled to discovery on their selective prosecution claim. As the Ninth Circuit has summarized, "*Armstrong* was . . . premised on the notion that the standard of discovery for a selective prosecution claim should be nearly as rigorous as that for proving the claim itself"—and accordingly, "the standard was intentionally hewn closely to the claim's merits requirements." *Sellers*, 906 F.3d at 852 (citing *Armstrong*, 517 U.S. at 468).

     Defendant has not met his burden under *Armstrong*. As an initial matter, he nowhere identifies other individuals who were not leftwing protestors who could have been prosecuted for Interstate Riot but were not so prosecuted. Defendant instead points to various individuals who were charged for rioting under State law, while failing to mention the political affiliations of

these individuals or whether they traveled, or communicated, from outside Oregon. *See* Defendant's Status Report, ECF 36 at 6–8. Without evidence on those prima facie elements of selective prosecution, or addressing the fact that Defendant was distinct from other alleged protestors as an active-duty member of the Army at the time of his arrest, Defendant is unable to justify the broad discovery he seeks. *See United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam) (explaining that under *Armstrong*, "raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*").

    Similarly, the newspaper articles he cites are insufficient. In *Armstrong*, the defendants also presented "a newspaper article reporting that federal crack criminals are being punished far more severely than if they had been caught with powder cocaine." 517 U.S. at 460 (citation, ellipsis, and internal quotation marks omitted). The Supreme Court rejected the defendants' reliance on the newspaper article, because it "was not relevant to an allegation of discrimination in decisions to prosecute." *Id.* at 470. So too here: Defendant's newspaper articles make broad claims about the Department of Homeland Security's ("DHS") and FBI's surveillance of protests in Portland in the aftermath of George Floyd's death and the election of President Joseph R. Biden, Jr. *See* Ex. F, ECF 39; Ex. G, ECF 39. It is unclear, however, what these articles have to do with the prosecutorial decisions of the U.S. Attorney's Office for the District of Oregon, an entity nowhere mentioned in either article. Nor do these articles somehow allow this Court to impute animus to the prosecution, as the articles involve a variety of hearsay statements— "remote in time and made in unrelated contexts"—about other federal actors. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020) (plurality opinion); *id.* at 1919 n.1 (Thomas, J., concurring in the judgment in part and dissenting in part); *id.* at 1936 (Kavanaugh, J., concurring in the judgment in part and dissenting in part).

PAGE 9 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

In sum, Defendant has not made the rigorous, threshold showing that *Armstrong* demands before a criminal defendant may request discovery for a selective prosecution claim.[1] At oral argument, Defendant did not further attempt to justify his requests under *Armstrong*.

### 2. Outrageous Government Conduct

Defendant contends that the material he is seeking is relevant to a potential claim of outrageous government conduct. Mot., ECF 39 at 9 (referring to "possible egregious governmental misconduct"). The Government responds that any such evidence must fail in view of *Armstrong*'s holding that Rule 16 and *Brady* require only the disclosure of evidence relevant to attacking the Government's case-in-chief. *See* Opp., ECF 40 at 9–10, 12, 13.

This Court agrees with the Government that Defendant's mere reference to alleged outrageous government conduct is not, at this time, sufficient for this Court to order the Government to produce documents. Although there is no controlling precedent on the showing needed to merit discovery on an outrageous government conduct claim, *Armstrong* and its progeny offer compelling guidance.

In *Armstrong*, the Supreme Court, interpreting the term "defense" in Rule 16(a)(1)(E), explained that "[w]hile it might be argued that as a general matter, the concept of a 'defense' includes any claim that is a 'sword,' challenging the prosecution's conduct of the case, the term may encompass only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged." 517 U.S. at 462. *Armstrong* then concluded that "Rule 16[(a)(1)(E)] authorizes defendants to examine Government documents

---

[1] *Brady* is inapplicable to Defendant's selective prosecution claim because *Brady* requires that the Government furnish Defendant with evidence relevant to guilt or innocence, or impeachment, not to what *Armstrong* described as "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." 517 U.S. at 463; *see Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014).

material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id.* at 463. *Armstrong* went on to require defendants seeking discovery on selective prosecution claims to make a threshold showing of discriminatory prosecution before being entitled to such discovery.

In *United States v. Chon*, the Ninth Circuit applied *Armstrong* to a request for discovery related to whether the Naval Criminal Investigative Service ("NCIS") investigated civilians in violation of the Posse Comitatus Act ("PCA"). 210 F.3d at 994. The defendants sought this discovery apparently as part of an "outrageous governmental conduct" claim. *See* Defendant-Appellant Chae Won Chon's Opening Brief, *Chon*, 210 F.3d 990 (No. 98-10469), 1999 WL 33612246, at *44, 48. The Ninth Circuit in *Chon* reiterated that *Armstrong* "ruled that defendants are entitled to the discovery of only those materials that are relevant to the defendant's response to the Government's case in chief." 210 F.3d at 995. As a result, the *Chon* Court held, the defendants were "entitled to the discovery of only those materials relevant to the charges of theft and conversion of government property and receipt of such property." *Id.* Because the defendants' "discovery request [was] considerably broader and the materials in question [did] not serve the purpose of fortifying [their] 'shield claims,'" the requested materials about the NCIS were not discoverable under Rule 16(a)(1)(E). *Id.*

In *United States v. Ail*, a court in this District applied the lessons of *Armstrong* to deny a motion to compel discovery concerning an outrageous government conduct claim. No. CR 05–325–RE, 2007 WL 1229415, at *3–4 (D. Or. Apr. 24, 2007). There, United States District Judge Redden, after recounting *Armstrong*'s reasoning, explained that an "outrageous governmental misconduct claim is at least roughly analogous to the selective prosecution claim brought in *Armstrong*." *Id.* at *3. "As in *Armstrong*," Judge Redden reasoned, an outrageous government

conduct claim "constitutes an independent assertion that the government has engaged in conduct that violates due process," and Judge Redden also found both claims to be "similarly narrow." *Id.* (citation omitted). On account of these similarities, Judge Redden concluded, "to obtain discovery in support of an outrageous governmental misconduct claim, a defendant must present clear evidence . . . contrary to the presumption that a prosecutor has not violated the Constitution." *Id.* (citation and internal quotation marks omitted); *see also, e.g.*, *United States v. Collins*, Case No. 5:23cr9-TKW, 2023 WL 5013053, at *3 (N.D. Fla. Aug. 4, 2023) (adopting similar test); *United States v. Koschtschuk*, No. 09–CR–0096(S)(M), 2011 WL 1549464, at *2 (W.D.N.Y. Apr. 22, 2011) (same); *United States v. Griggs*, Criminal Action No. 08–cr–00365–MSK, 2009 WL 3838022, at *3–4 (D. Colo. Nov. 12, 2009) (same).

In light of *Armstrong* and *Chon*, this Court finds *Ail* to be highly persuasive and therefore adopts the *Ail* test for discovery on an outrageous government conduct claim.[2] Indeed, after *Ail*,

---

[2] It is true that *United States v. Soto-Zuniga*, 837 F.3d 992, 1000–01 (9th Cir. 2016), viewed *Armstrong* as applying "to the narrow issue of discovery in selective-prosecution cases." However, *Soto-Zuniga* did not involve any affirmative claims for dismissal of the indictment, such as for selective prosecution or outrageous government conduct. Instead, the case concerned a request for discovery into the alleged illegality of the immigration checkpoint where the Government seized evidence from the defendant. *Id.* at 998–1002.

Moreover, in the absence of directly controlling precedent on the issue of discovery on an outrageous government conduct claim, this Court views as nearly dispositive *Armstrong*'s interpretation of "defense" in Rule 16(a)(1)(E) as referring only to "the narrower class of 'shield' claims" and as not including "any claim that is a 'sword,' challenging the prosecution's conduct of the case." 517 U.S. at 462. After all, "just as binding as [*Armstrong*'s] holding is the reasoning underlying it." *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019).

Additionally, *Soto-Zuniga*'s description of *Chon*'s reasoning does not affect this Court's analysis either. It is true that *Soto-Zuniga* stated that "*Chon* turns on the determination that the requested discovery had no relevance to whether NCIS violated the PCA in the defendants' particular case." 837 F.3d at 1001. But *Soto-Zuniga* distinguished itself from *Chon* on the ground that while *Chon* involved a request "'considerably broader' than any materials that could be relevant to the specific charges against the defendants," Mr. Soto-Zuniga "sought discovery of whether he and his automobile were unconstitutionally seized . . . —an issue that [was] central to his defense, because it could spell the difference in a suppression motion of the key physical

the Ninth Circuit made clear that an accusation of outrageous government conduct is "not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." *United States v. Nickerson*, 731 F.3d 1009, 1015 (9th Cir. 2013) (citations and internal quotation marks omitted). Thus, an outrageous government conduct claim, like a selective prosecution claim, falls outside the plain language of Rule 16(a)(1)(E) and requires an independent threshold showing for any relevant discovery.

Under *Ail*, Defendant is not entitled to discovery on his outrageous government conduct claim. Given the similarities between the claims of selective prosecution and outrageous government conduct, what the Ninth Circuit said about the former governs the latter: "the standard for discovery for [an outrageous government conduct] claim should be nearly as rigorous as that for proving the claim itself." *Sellers*, 906 F.3d at 852 (citing *Armstrong*, 517 U.S. at 468). That standard is onerous. "A prosecution results from outrageous government conduct when the actions of law enforcement officers or informants are so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Pedrin*, 797 F.3d 792, 795 (9th Cir. 2015) (citation and internal quotation marks omitted). "[D]ismissing an indictment for outrageous government conduct is limited to extreme cases in which the defendant can demonstrate that the government's conduct violate[d] fundamental fairness and [was] so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Mohamud*, 843 F.3d 420, 435 (9th Cir. 2016) (ellipsis omitted) (quoting *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013)). "This is an 'extremely high standard,'" *id.* (quoting *Black*, 733 F.3d at 302), that the Ninth Circuit has found

---

evidence against him." *Id.* at 1001–02 (quoting *Chon*, 210 F.3d at 995). Thus, *Soto-Zuniga* nowhere narrows *Chon*'s discussion of *Armstrong* or the general principle that Rule 16(a)(1)(E) generally allows discovery only for a claim attacking the Government's case-in-chief.

to be satisfied on only one occasion, *United States v. Dominguez-Caicedo*, 40 F.4th 938, 949 (9th Cir. 2022) (so noting).

Defendant has not made a threshold showing that he can meet this standard. Defendant's brief nowhere acknowledges *Armstrong* or Rule 16(a)(1)(E)'s limits. Further, under Ninth Circuit precedent, "[i]t is not outrageous" for government agents "to infiltrate a criminal organization, to approach individuals who are already involved in or contemplating a criminal act, or to provide necessary items to a conspiracy," *Black*, 733 F.3d at 302 (citation omitted), and a defendant "must show a nexus between the [alleged outrageous] conduct and either securing the indictment or procuring the conviction." *Dominguez-Caicedo*, 40 F.4th at 949 (citation, original brackets, and internal quotation marks omitted). Therefore, Defendant's speculative allegation that "federal agents were tapping and cloning phones of [unknown] protestors," who were suspected of committing violent acts, is insufficient to establish—with respect to the Defendant as an individual and the specific charge he faces—outrageous government conduct. Mot., ECF 39 at 9; *see also United States v. Bin Laden*, No. S(7) 98 CR. 1023(LBS., 2001 WL 30061, at *8 (S.D.N.Y. Jan. 2, 2001) (holding that FISA surveillance was not outrageous government conduct).

In sum, under Rule 16(a)(1)(E) and relevant case law, Defendant is not entitled to discovery concerning his outrageous government conduct claim.

### 3.  Impeachment

Defendant contends that some of the material he seeks can be used to impeach the Government's witnesses, including Portland Police Bureau ("PPB") Detective Eric B. McDaniel and FBI Special Agent Peter A. Jackson. Mot., ECF 39 at 7, 9, 13. The Government admits that it intends on calling these two as witnesses at trial. Opp., ECF 40 at 10–11 nn.2, 4. At the same

PAGE 14 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

time, the Government urges this Court to reject impeachment as a basis for discovery because "Defendant's request is not timely." *Id.* at 12 n.6.

The Government is correct that Defendant's Motion is untimely. "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *United States v. Nixon*, 418 U.S. 683, 701 (1974); *see United States v. Rinn*, 586 F.2d 113, 119 (9th Cir. 1978) (explaining that information that "merely goes to the credibility of the witness . . . need not be disclosed prior to the witness testifying"). Impeachment evidence need only be "disclosed at a time when it still has value." *United States v. Houston*, 648 F.3d 806, 813 (9th Cir. 2011); *see Alahmedalabdaloklah*, 94 F.4th at 828 ("If the defendant is presented with a substantial opportunity to use the belatedly disclosed evidence, there is no prejudice" and therefore no *Brady* violation.). Furthermore, the Jencks Act "requires the district court, on motion of the defendant, to order production of any 'statement' of the witness in possession of the government that relates to the subject matter of the witness's testimony" only "[a]*fter* a government witness testifies on direct examination." *United States v. Robertson*, 895 F.3d 1206, 1216 (9th Cir. 2018) (emphasis added) (quoting 18 U.S.C. § 3500(b)).

Defendant has not explained to this Court why any impeachment evidence is needed at this time—seven months before trial. At oral argument, the Government represented that it is not certain at this time which witnesses and evidence it will be putting on for its case-in-chief. As such, the Government stated that it will likely provide impeachment information in August or September—at least three months before trial. Accordingly, impeachment is not currently a valid basis for discovery.

### 4. Suppression Under the Fourth Amendment and Privacy Act

Generally, defendants may request discovery from the Government to challenge, on constitutional grounds, the seizure of evidence the Government intends to use at trial. In *Soto-*

*Zuniga*, the Ninth Circuit explained that "Rule 16(a)(1)(E) permits discovery to determine whether evidence in a particular case was obtained in violation of the Constitution and is thus inadmissible." 837 F.3d at 1001.

That principle, however, does not apply to Defendant's desire for information regarding how the FBI acquired Defendant's military files. With respect to those files, Defendant's exclusive contention appears to be that the files must be suppressed because the Government acquired them in violation of a statute: The Privacy Act, 5 U.S.C. § 552a. *See* Mot., ECF 39 at 11–13; Defendant's Status Report, ECF 36 at 9. The Privacy Act, however, does not contain a remedy for suppression in the event of a violation; it instead provides for civil injunctive and compensatory remedies as well as criminal pecuniary penalties. *See* 5 U.S.C. § 552a(g)–(h).

At this time, this Court cannot read an exclusionary rule into the Privacy Act.[3] "An exclusionary rule is typically available only for constitutional violations, not for statutory or treaty violations." *United States v. Lombera-Camorlinga*, 206 F.3d 882, 886 (9th Cir. 2000) (en banc); *see United States v. Smith*, 196 F.3d 1034, 1040 (9th Cir. 1999) ("The use of the exclusionary rule is an exceptional remedy typically reserved for violations of constitutional rights." (citation omitted)). The Supreme Court has "repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application." *United States v. Dreyer*, 804 F.3d 1266, 1278 (9th Cir. 2015) (en banc) (quoting

---

[3] Many courts have held that the Privacy Act does not permit criminal defendants to seek the exclusion of evidence. *See, e.g.*, *United States v. Bressler*, 772 F.2d 287, 293 (7th Cir. 1985); *United States v. Goree*, 47 F. App'x 706, 711–12 (6th Cir. 2002); *Word v. United States*, 604 F.2d 1127, 1129 (8th Cir. 1979); *United States v. Revland*, No. 5:06–HC–2212–BR–JG, 2011 WL 7665381, at *1 (E.D.N.C. Nov. 30, 2011); *United States v. Gillotti*, 822 F. Supp. 984, 989 (W.D.N.Y. 1993); *cf. McLean v. Hernandez*, 848 F. App'x 727, 728 (9th Cir. 2021) (explaining in a *Bivens* action that the pro se prisoner plaintiff's "remedy for an alleged violation of the Privacy Act of 1974 was damages, not exclusion of evidence").

PAGE 16 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

*Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Moreover, judicially created exclusionary rules implicate the Constitution's separation of powers because "[w]here the legislature has already specified a remedy for a statutory violation, . . . [courts] would encroach upon the prerogatives of Congress were [they] to authorize a remedy not provided for by statute." *United States v. Forrester*, 512 F.3d 500, 512 (9th Cir. 2008) (citation and internal quotation marks omitted).

      Ninth Circuit precedent thus generally "prohibits judicial creation of a remedy for a statutory violation when the statute itself already articulates the remedy." *Smith*, 196 F.3d at 1040 (declining to suppress evidence for an alleged violation of the federal bribery statute); *see Schultz v. United States*, 594 F.3d 1120, 1123 (9th Cir. 2010) ("It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." (brackets omitted) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)). When "there is no mention of suppression of evidence in the statutory text," and the text prescribes other remedies, this Court cannot suppress evidence even if it was acquired in violation of a statute. *Forrester*, 512 F.3d at 512 (refusing to read an exclusionary rule into the then-applicable pen register statute); *see United States v. Moalin*, 973 F.3d 977, 996–97 (9th Cir. 2020) (refusing to read an exclusionary rule into FISA); *Dreyer*, 804 F.3d at 1278–81 (refusing to read an exclusionary rule into the PCA under the circumstances); *cf. Sanchez-Llamas v. Oregon*, 548 U.S. 331, 346–47 (2006) (refusing to read an exclusionary rule into the Vienna Convention). Here, the Privacy Act contains specific remedies; therefore, it presumptively does not permit the suppression of evidence, even supposing that the Government acquired Defendant's military files in violation of the Act.

      All told, while Defendant generally may seek discovery relevant to the suppression of evidence pursuant to the Constitution, Defendant cannot do so with respect to a motion to

suppress evidence gathered from Defendant's military files because the Privacy Act does not permit such suppression.

*   *   *

Defendant cannot at this time seek materials relevant to selective prosecution, outrageous government conduct, the impeachment of witnesses, or a motion to suppress his military files.

## B.  Defendant's Requests for Materials

### 1.  Any and All Video and Audio Recordings of the Protest on April 20, 2021, in the Control of the Government

Defendant requests "all videos in the possession of the government showing the hundreds of individuals who looked and were dressed exactly the same" as Defendant on the night of April 20, 2021. Mot., ECF 39 at 7. In particular, Defendant says that recent discovery shows that there are additional videos within the Government's control that have not been supplied to Defendant. *Id.* The Government does not contest this particular request and represents that it "requested those materials from PPB" and "produced them to Defendant on April 18, 2021 [sic],"[4] after the filing of Defendant's Motion to Compel. Opp., ECF 40 at 9. Otherwise, the Government says, "it has produced all video and audio recordings in its possession, custody, and control." *Id.* At oral argument, Defendant accepted this representation. *See* Minutes of Proceedings, ECF 43. In light of the Government's and Defendant's representations, this request is denied as moot.

### 2.  Records and Documents Regarding the Search and Seizure of Defendant's Phone

Before and during oral argument, the Government represented that it would no longer be using information gathered from Defendant's cellphone as part of its case-in-chief, though it did

---

[4] This appears to be a typo in the Government's Brief. The Government seems to have meant April 18, 2024, not 2021.

state that it would reserve the right to use any such information to impeach or cross-examine witnesses. Minutes of Proceedings, ECF 43. The Government further represented at oral argument that it has already provided Defendant with all information in its possession regarding the seizure and search of his cellphone and would continue to provide any such additional materials.

Nonetheless, this Court will evaluate each of Defendant's specific requests for discovery.

### a. Records and Documents Concerning Communications Between Any Federal Law Enforcement Agent or Officer and Any Staff with the PPB or the Multnomah County District Attorney's Office

Defendant's request here is generally precluded by Rule 16(a)(2). Courts within the Ninth Circuit have consistently held that "Rule 16(a)(2) shields from disclosure 'communications between law enforcement entities.'" *United States v. Cervantes*, Case No. 21-cr-00328-YGR-1 (DMR), 2023 WL 4744060, at *5 (N.D. Cal. July 25, 2023) (quoting *United States v. Williams*, Case No. 13-cr-00764-WHO-1, 2015 WL 13359890, at *3 (N.D. Cal. June 23, 2015)); *see United States v. Pulido-Avina*, Case No. 2:21-cr-00396-FLA, 2022 WL 444842, at *2 (C.D. Cal. Feb. 14, 2022) (explaining that "[s]everal courts have held that interagency communications, including emails, fall within [Rule 16(a)(2)] and need not be produced" and citing cases). Also, Defendant has otherwise failed to explain how these documents contain evidence falling under *Brady* or *Giglio*. And in any event, the Government has represented that it "has produced all other discoverable materials and communications currently in its possession, custody, or control regarding Defendant['s] phone, and it has no knowledge that any such records exist prior to April 20, 2021." Opp., ECF 40 at 10. At oral argument, Defendant accepted this representation. *See* Minutes of Proceedings, ECF 43. For all of these reasons, the request is denied.

**b. Records and Documents Confirming the Identity of the Individual Who Provided the Government with the Property Receipt Produced on February 23, 2023**

This request concerns a PPB property receipt produced on February 23, 2023, which labeled Defendant's cellphone as "prisoner property" and not as "evidence." Mot., ECF 39 at 3–4. The Government represents that it has already furnished discovery identifying PPB Detective Eric B. McDaniel as the individual who provided the Government with the relevant property receipt, as well as "all other responsive documents currently in its possession, custody, or control." Opp., ECF 40 at 10. At oral argument, Defendant accepted this representation. *See* Minutes of Proceedings, ECF 42. Thus, this request is denied as moot.

**c. Records and Documents Confirming the Identity of the Individual Who Provided the Government with the Property Receipt Produced on April 9, 2024**

This request concerns a PPB property receipt produced on April 9, 2024, which labeled Defendant's cellphone as "evidence" and scratched out the original classification of "prisoner property." Mot., ECF 39 at 4–5. The Government represents that it has already furnished discovery identifying PPB Detective Eric B. McDaniel as the individual who provided the Government with the relevant property receipt. Opp., ECF 40 at 10. In addition, the Government states that it "has produced all other responsive documents currently in its possession, custody, or control." *Id.* Thus, this request is denied as moot.

**d. Records and Documents Explaining the Alteration of the Property Receipt**

The Government states that, in response to Defendant's Motion to Compel, it "has inquired with PPB personnel as to an explanation for the difference between the two versions" of the property receipt produced on February 23, 2023 and April 9, 2024, and "will promptly provide any additional responsive documents or information to Defendant when received." Opp.

ECF 40 at 11. At oral argument, the Government represented that it would continue to inquire for information from PPB and provide that information to Defendant. Based on this representation, this request is denied as moot.

###### e.   Records and Documents Establishing What Federal Agent Sought Permission to Obtain Defendant's Phone from the PPB and the Basis Therefore

The Government represents that it "has produced all . . . discoverable evidence currently in its possession, custody, [and] control" with respect to the identity of the federal agent that obtained Defendant's phone from PPB. Opp., ECF 40 at 11. Further, the Government states that this evidence shows that FBI Special Agent Peter A. Jackson sought and obtained Defendant's cellphone. *Id.* At oral argument, the Government also represented that it has produced all discoverable evidence currently in its possession, custody, and control with respect to Special Agent Jackson's basis for obtaining Defendant's cellphone. Minutes of Proceedings, ECF 43. Accordingly, Defendant's request is denied as moot.

###### f.   Records and Documents Establishing Who Authorized the Request to Obtain Defendant's Phone from the PPB

At oral argument, the Government represented that it had produced all discoverable materials concerning Special Agent Jackson, including those relevant to this request, in its possession, custody, and control. Minutes of Proceedings, ECF 43. Further, to the extent that any additional records exist, they would be inter-agency documents that are barred from discovery under Rule 16(a)(2). *Cervantes*, 2023 WL 4744060, at *5; *Williams*, 2015 WL 13359890, at *3; *Pulido-Avina*, 2022 WL 444842, at *2. For all these reasons, this request is denied.

###### g.   Any Records or Documents Regarding Any Cloning or Tap on Defendant's Phone that Existed Prior to His Arrest on April 20, 2021

As an initial matter, the Government says it has no responsive "records or documents in its possession, custody, or control," nor any "knowledge that any such materials exist," Opp.,

PAGE 21 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

ECF 40 at 12. Further, at oral argument, the Government represented that it was unaware of any cloning or tapping of Defendant's phone prior to April 20, 2021; Defendant accepted this representation. Minutes of Proceedings, ECF 43.

Moreover, although defendants can generally seek discovery related to suppression, Defendant here has failed to justify his requests with any evidence beyond mere speculation. *See Santiago*, 46 F.3d at 894.

Though he does not say this explicitly, Defendant's argument appears to be that the requested information is relevant to the possible exclusion of Defendant's cellphone pursuant to the fruit of the poisonous tree doctrine. Under that doctrine, the Government cannot use certain evidence if investigatory conduct in violation of the Fourth Amendment "tended significantly to direct the investigation toward the specific evidence sought to be suppressed." *United States v. Davis*, 332 F.3d 1163, 1171 (9th Cir. 2003) (citation, brackets, and emphasis omitted). Thus, in *United States v. Artis*, the Ninth Circuit affirmed the suppression of evidence found on a cellphone because, even though the Government had a warrant to search the cellphone, the original evidence the Government had used to make its probable cause showing was retrieved in violation of the Fourth Amendment. 919 F.3d 1123, 1131–33 (9th Cir. 2019).

This doctrine, however, is not applicable here. The Government's application for a search warrant to access Defendant's cellphone—which remains under seal—does not mention, much less rely on, any prior tapping or cloning of Defendant's cellphone. Nothing in the warrant application suggests that the Government was led to the cellphone through information acquired unlawfully, e.g., via a warrantless phone tap. Defendant has offered no evidence—beyond speculation—for this Court to conclude otherwise. *United States v. Lucas*, 841 F.3d 796, 808

PAGE 22 – OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

(9th Cir. 2016) (explaining that motions to compel cannot rest on "mere speculation about

materials in the government's files").

For all these reasons, Defendant's request must be denied.

### h.    Any Records or Documents Regarding the Cloning of Any Phones of Any Individuals Involved in the Protests in Portland on April 19 and 20, 2021, Regardless of Whether Those Individuals Were Arrested

This request must be denied as overbroad because it has no relevance to Defendant's guilt

or innocence, or to the Government's case-in-chief. *See Wolfenbarger*, 2019 WL 3037590, at *9;

*Chon*, 210 F.3d at 994–95. Instead, this request is relevant only to Defendant's claims of

selective prosecution and outrageous government conduct. As explained above, Defendant has

failed to make the rigorous threshold showing for discovery concerning these claims.

Accordingly, this request must be denied.

### 3.    Records and Documents Regarding the Deployment of Federal Agents as Undercover Operatives at the Protests in Portland on the Nights of April 19 and 20, 2021

Defendant expressly states that all of his requests under this category are "[i]n support of"

his selective prosecution claim. Mot., ECF 39 at 10. Therefore, these requests must be denied

because Defendant has failed to make the threshold showing required under *Armstrong*. Further,

many of the requested documents—which are internal government documents—are exempt from

discovery under Rule 16(a)(2). At oral argument, moreover, the Government represented that it

has provided all material it has received from other federal agencies and that it disclosed to the

defense the identity of the undercover individual who identified Defendant on April 20, 2021 as

well as the report authored by that individual. Minutes of Proceedings, ECF 43. For all these

reasons, this request is denied.

### 4.  Records and Documents Establishing How the FBI Obtained Defendant's Entire Military File

As explained above, Defendant has not sufficiently explained how this request is relevant to a motion to suppress, given that the Privacy Act does not provide for suppression as a remedy. Additionally, it is unavailing that Defendant also intends to use any information about the Government's alleged violations of the Privacy Act to "demonstrate [its] inherent bias in" investigating Defendant, "cast doubts on" the credibility of the Government's witnesses, and "undermine[] any purported validity of the allegations against" Defendant. Mot., ECF 39 at 13. As already explained, Defendant has not shown why his request for impeachment evidence is timely seven months in advance of trial. And more generally, it is unclear how either the Federal Government's investigation of alleged violent rioters in downtown Portland, or its ostensible investigation of a member of the U.S. Army, evidences the improper bias of federal agents against Defendant. *Cf. Black*, 733 F.3d at 302 (explaining that investigating a potential crime is not outrageous government conduct).

With respect to the written request form that the FBI filed with the Department of Defense to acquire Defendant's military file, this Court reviewed the form in camera following oral argument. This Court finds that the request does not contain any *Brady* or *Giglio* evidence, nor any evidence relevant to the Jencks Act. This Court finds moreover that the request falls under Rule 16(a)(2)'s work product exception to discovery. Mot., ECF 39 at 12–13; *see Cervantes*, 2023 WL 4744060, at *5; *Williams*, 2015 WL 13359890, at *3; *Pulido-Avina*, 2022 WL 444842, at *2; *see also United States v. Tribble*, 559 F. Supp. 3d 41, 46–47 (D.P.R. 2021) (holding that reports by a DHS auditor are not discoverable under Rule 16(a)(2)). For all these reasons, Defendant's request is denied.

**5.  Copies of All Communications Between State, Local, and Federal Law Enforcement About Mr. Harold**

This request amounts to an overbroad fishing expedition for materials unmoored from the specific charge brought against Defendant. *See Wolfenbarger*, 2019 WL 3037590, at *9; *Chon*, 210 F.3d at 994–95. Further, the request is squarely foreclosed by Rule 16(a)(2) to the extent that it is seeking evidence outside the scope of *Brady* and *Giglio*. *See Cervantes*, 2023 WL 4744060, at *5; *Williams*, 2015 WL 13359890, at *3; *Pulido-Avina*, 2022 WL 444842, at *2. And it appears that this evidence would be most relevant to Defendant's claims of selective prosecution and outrageous government conduct, Mot., ECF 39 at 13–15 (referring to "significant questions about law enforcement activities in this matter," the lack of state charges, and the "conduct of federal law enforcement agents")—which, again, Defendant is not entitled to under *Armstrong*, *Chon*, and *Ail*. For all these reasons, this request is denied.

\*   \*   \*

In sum, Defendant's requests for discovery are all denied. At oral argument, Defendant primarily defended his Motion on the ground that there "must be something going on here." Minutes of Proceedings, ECF 43. Defendant insisted it was unusual for him to face federal prosecution in this matter, instead of state prosecution. But "the *Petite* policy does not confer substantive rights" on defendants. *Lucas*, 841 F.3d at 806. Nor is Defendant entitled to discovery based on his speculative assertion that federal agents in Portland must have been biased against Defendant because, in his view, they exceeded their authorization on April 20, 2021 by pursuing ostensibly violent rioters in the City's downtown. *See Santiago*, 46 F.3d at 894; *Lucas*, 841 F.3d at 808. Finally, Defendant seems to believe that, because the FBI discovered that he was a member of the Army within eighteen hours of his arrest, he is entitled to discovery into whether disparate federal agencies were investigating him even before his arrest. Such "bald assertions"

do not entitle Defendant to discovery. *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984) ("Appellants' bald assertions of suspected CIA involvement in this case were insufficient to make a prima facie case of materiality to entitle appellants to the requested documents."); *see also United States v. Matta-Ballesteros*, 71 F.3d 754, 770 (9th Cir. 1995), *opinion amended on denial of reh'g*, 98 F.3d 1100 (9th Cir. 1996).

Seeking discovery based on speculation is the very definition of a fishing expedition. *See United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) ("[M]ere speculation about materials in the government's files [does] not require the district court to make those materials available." (citation and internal quotation marks omitted)). Because such speculation drove almost all of Defendant's discovery requests in his Motion, this Court denies them.

## CONCLUSION

Defendant's Motion to Compel, ECF 39, is DENIED in its entirety.


**IT IS SO ORDERED.**

DATED this 14th day of May, 2024.


/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge